The District Court abused its discretion in three ways when it faced its decision to deny injunctive relief on erroneous legal standards. First, the District Court erred by requiring satisfaction of a higher burden to establish standing. Second, the District Court erred in reading the enforcement provision and incorporated remedies in Title III of the ADA too narrowly. Third, the District Court erred by concluding that it lacked authority to order the injunctive relief for the injuries Mr. Borenstein continues to endure, either under the ADA or under any other claims that his complaint plausibly asserts. Counsel, could you just clarify, I mean, so there's two kinds of relief that potentially at issue in this case. What I'll call a specific injunction, that they have to give him his dog back, and then what I'll call a general injunction, that they have to change their procedures or notice or whatever so that this sort of thing doesn't happen in the future. In this appeal, are you seeking a specific injunction, a general one, or both? I think that, unfortunately, the way that Mr. Borenstein pled his TRO and his complaint, it would just be the specific injunction. But absolutely, as far as the, if it is possible, we would also be seeking the general injunction. Okay, well then why don't, focusing on the specific then, how do you reconcile an order requiring the return of his dog with the provision in 2008-3A that says that the court can give preventive relief? How is returning the dog preventive relief? Because, Your Honor, every day that he's without his dog is discriminatory conduct. And if you look at the provision, and this is one of the errors that the court made in Section 42 U.S.C. 12-188, there's a conjunction or in there that the court failed to recognize. So the court's, that provision states that where a person who is being subjected to discrimination, and as a disabled person, without his service dog, there's been an interference in his use and enjoyment of his service dog, where he's been discriminated against and is being discriminated against on the basis of that disability, that's in violation of any provision of Subchapter 3. The or pertains to a future injury where there's reasonable grounds for believing that someone is going to be subjected to discrimination. And that specifically says, in violation of Section 12-183 of the title, that particular title relates to construction only. So that idea that he has to have a second injury where the court said he has to subject himself to the Animal Foundation with another dog that they would take in order to get relief is erroneous. He is currently being subjected to discrimination because they've taken his dog without lawful authority. So he's entitled to relief to prevent that ongoing harm. Ms. Palmer, I just have a quick question. Does Mr. Bornstein have another dog now? No, Your Honor, he does not. There's information that's in the, not in the record, but on the docket as to why he does not have a dog. And if Your Honor would like me to address that, I'd be happy to do so. No, I don't think so. What do you understand the nature of TAF's animal shelter operation to be? They're contracted by Clark County Animal Control, so by statute, and that's listed in our addendum. It shows what their actual mission is, and it's also set forth by NRS. They're a holding facility for animals, and then they adopt animals out. They have programs, and in the past, Mr. Bornstein's dog that was in their care about six months before Manna, the current dog that's the subject of this litigation, they had kept his former service dog under that KEPT program, which is a foster program to keep people and animals together. In that case, his dog was in their custody for, I believe, about 40 days, and they operated exactly as they should. This time, they did not. You're saying they're a boarding facility. Is that what you're saying? They would be, yes, Your Honor. When they accepted his dog from the hospital for safekeeping, they assumed that responsibility. Counsel, did you have an opportunity in the district court to amend the pleadings? No, no, I can't hear you. Did you have an opportunity to amend in the district court? Yes, Your Honor, and we have amended. When did that happen? We filed our amended complaint at the beginning of June. Excuse me, it was May, the latter part of May, I think, the beginning of June. Now, Your Honor, the other thing that the district court did wrong was, in its analysis, under the winter factors for preliminary injunctive relief, by finding that it lacked standing, which was incorrect. The burden for standing is different than the burden for injury, in fact, under the ADA. All that the plaintiff has to show is an actual case of controversy, and the conduct that he's seeking to enjoin is fairly traceable to the Animal Foundation, and that the court can order relief that would rectify that injury. Instead, what the court did is, by erroneously reading that requirement into future discrimination into the statute for the ADA, the court found that he lacked standing, and that was an error. He clearly has an injury, even if he would not have a meritorious claim under the ADA, which we dispute. So then when the court exercised the winter factors, the court did so with an eye towards the idea that there was no standing. The court said, in fact, the court seemed to concede that he might have an actual claim, but if it weren't for the fact that the court thought he had to show this future injury. Because the court said, even if he could establish an ADA violation, it suggested that the court believed that he might have. Then the court failed to even consider the alternative standard that it put forth in the Wild Rockies Alternative Sliding Scale Analysis, which just required Mr. Bornstein to show serious questions going to the merits, so long as he could show that the balance of hardship tipped sharply in his favor, which he did. We're talking about an individual who has serious mental disabilities, who has threatened suicide, and whose dog has kept him from exhibiting a lot of behaviors that would otherwise be destructive to him. The dog was a service animal that required a different standard because he wasn't a pet. They couldn't just adopt him out as a pet. He was a service animal. And the court made findings of that fact. The court said that he was trained to assist him with tasks related to his disabilities. That is the definition of a service animal as set forth by the ADA regulations. And then, Your Honor, I see that I have two minutes left. I'd like to reserve the remainder of my time. Thank you, Counsel. Good morning, Your Honors, and may it please the Court. My name is Carrie Kleinman, and I am here today on behalf of the Animal Foundation. The Animal Foundation is a nonprofit organization dedicated to saving the lives of all the healthy and treatable animals in the Las Vegas Valley. Contrary to what the appellant was just arguing, we are not a boarding facility. We are not a housing facility where any citizen can simply leave their animal for however long they would like. What the Animal Foundation does is it takes in animals. We're a public shelter, so we take in animals that are brought either by a law enforcement agency like Animal Control or citizens. And we take care of those animals until we can find a positive placement for them, which is either transfer to a partner organization or sending it to an adoptive family. Despite what appellant may be trying to argue here, the question before this Court is simply, did the District Court abuse its discretion when it declined to grant appellants requested mandatory injunctive relief? As Judge Miller very astutely pointed out, there are two kinds of injunctions, and the one that the appellant is seeking here is a specific injunction for mandatory relief, taking this dog out of his new family's home, out of his current home, and giving him to the appellant. What the Court below did was apply the correct legal standard. I don't think that there is much of a dispute that the correct legal standard when addressing a request for a preliminary injunction is the four-part test in winter. Appellant has conceded and certainly understands that that is the test that the District Court applied. So the correct legal standard was applied. The District Court also looked at the alliance for the World Rockies v. Cottrell sliding scale test and concluded that because there was not a likelihood of success on the merits or a serious question going to the merits, and because the balance of hardships tipped in favor of the Animal Foundation rather than the appellant, a mandatory injunction could not issue. That was not an abuse of discretion. And why, Counsel, if the merits analysis turns on, in part, whether this is appropriately characterized as preventive relief under the ADA, can you respond to the argument from appellant that he's a disabled person, the dog was a service animal helping him with his disability, and he's suffering ongoing injury from not having it. So return of it would appropriately be characterized as preventive. Why is that wrong? That's a very good question. The first issue is the Animal Foundation does not concede that this was a service animal. As the record before the District Court and this panel shows, what appellant claims was a service animal after the event that gave rise to this complaint, appellant got a prescription for a psychiatric or emotional support animal. As this court, I'm sure, is aware, emotional support animals are not service animals, and they are not covered under the American with Disabilities Act. However, even if this animal were a bona fide service animal, that doesn't change the fact that the Animal Foundation was able to transfer lawful title. What happened in this case is certainly a tragic set of circumstances, but nothing that the Animal Foundation did violated the Americans with Disabilities Act. What was the Animal Foundation's legal relationship to the dog, Mana, when it put it up for adoption? At that point, when the Animal Foundation put Mana up for adoption, the Animal Foundation was the lawful owner of that dog. And that transfer of title happens automatically under Clark County ordinances. There's nothing in the American with Disabilities Act that refers specifically to the title to a service animal. In fact, the Americans with Disabilities Act really just says that a person with a disability who is assisted by a service animal must have the same access to facilities and services and other aspects of society that a person without a disability or without a service animal has. There's nothing in the Americans with Disabilities Act that requires an animal shelter to treat a purported service animal any differently. It looked like you had a question, Judge Miller. No, I'm sorry. Please continue. So, I'm not sure if I answered your question, Judge Miller, quite on the nose. The main issue with returning the purported service animal is that we do not believe, the Animal Foundation does not believe that it is required in any way by any set of laws because we were the legal owner of this animal when we placed it up for adoption. And what the district court did do was take the Animal Foundation's public policy argument to heart. The Animal Foundation cannot function if it was required to reach out to adopters who have opened their hearts and their homes to an animal. And at some point in the future, whether it be one day, six days, six months, six years, and say, oh, I'm sorry, someone claims that they have superior title because they have a disability. And so we have to take your animal back. Would you even be able to do that? I mean, the new owners are not a party to this case. If the district court entered an order saying you have to give Mr. Bornstein his dog back, would you, under state law, would you have the ability to get the dog if there's no injunction directed to the new owners? So, the district court did consider that issue, and now the complaint has been amended. So, in all honesty, arguably, this entire appeal is a little bit moot because the operative pleading that this decision was based on is no longer the operative complaint. There is now a new complaint with new parties, including a, you know, DOE party that is the adoptive family of this dog. At this point that this decision was issued, you know, certainly there could have been an order entered that required the Animal Foundation to take certain steps to try and bring this dog back or to identify the adoptive family. But the issue is, even if the Animal Foundation were required, or rather simply if the Animal Foundation were required, to disclose the identity of the adopters so that they could be brought into litigation, that would disincentivize animal adoptions. I know that I personally would not go and adopt an animal if I knew that six months, six weeks, six years later, I could be brought into court and have to face a litigation because somebody made a claim that they have a superior title to the animal that my family is now attached to. That's not in the public interest. In order to issue a preliminary injunction, especially a mandatory injunction that compels behavior, which is what the appellant was asking for here, the appellant had the very high burden of showing that the facts in the law clearly favor its position on all four winter factors. It's a conjunctive test. So he needed to prove a likelihood of success on the merits, a likelihood of irreparable harm, that the balance of equity is tipped in his favor, and that the injunctive relief is in the public interest. The appellant simply failed to do that and certainly did not meet the very high threshold of essentially without a doubt. If, as this court has said previously, mandatory injunctions should not issue in doubtful cases. Now certainly the appellant is arguing that the district court looked at the facts wrong and weighed the wrong things. However, this court, an American Trucking Association versus City of Los Angeles, said that as long as the district court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result had the appellate court applied the law to the facts of the case. That is what the appellant is arguing for. The appellant is arguing that this court enter an injunction earlier in the argument, admittedly that they didn't even ask for down below, but that this court enter an injunction simply because it disagrees with the weight and the findings of fact of the district court. The district court applied the appropriate law, looked at the facts, and decided that the appellant was not likely to succeed on the merits. Mr. Bornstein takes the position that you didn't have legal authority to give away his dog. You're telling us that the Animal Foundation owned the dog when it gave it out for adoption. That's based on the statute? Your Honor, I see that I'm already over time. You can finish. You can answer the question, please. Thank you, Your Honors. Yes, the Animal Foundation absolutely had clean title to this animal by operation of statute. What the appellant has mistaken and left out from both his analysis and the record is that this animal, this dog, was left in a car by the appellant when appellant was admitted to a hospital, which we now know he stayed in for more than three weeks. It's unreasonable to think that that dog could have stayed in that car. It's, in fact, against the law for an animal to be confined in a vehicle by itself. So when animal control came, the Animal Foundation disputes that there was a bailment situation that was created. What happened was the animal was impounded pursuant to law. It was held. It needed to be held for 72 hours. As a reasonable accommodation, the Animal Foundation held this animal for three weeks rather than three days for seven times the required hold period. At that point, Mr. Borenstein failed to come in and pick up his dog. And so the statute that governs the Animal Foundation says that if it is unclaimed by the owner within the time set by the statute, then the animal shall be released to and become the property of the contracted animal shelter. And since that is what the Animal Foundation is, and we waited three weeks, and Mr. Borenstein did not pick up his dog, we respectfully request that you affirm the district court's denial of the mandatory injunction. Thank you. Thank you, Counsel. Thank you, Your Honor. The respondent is absolutely incorrect when they say that they obtained lawful authority of the dog. The statute which they claim gives them the ownership of the dog is the Ordinance 1024-010, and that's at our addendum brief, page 9. There are three conditions under which they obtain a dog under this statute. The dog is running at large, without identification, or in violation of any section of the title. None of those things apply, because an at-large dog is specifically excluded, a dog who is enclosed in a self-contained structure where that dog is allowed to be, in this case his automobile. He did not leave his dog in the automobile and security walked by later. He told the hospital, when they told him, we're going to admit you, put you in intensive care, and sedate you. He told them, my service dog is in my car. I don't have anyone who can care for the dog. Please make arrangements. The hospital contacted the Animal Foundation. Counsel, regardless of who has lawful title to the dog, there are new owners, maybe they don't really have title, but the new family has possession of the dog. How can you get it back, or how can your client get it back, without an order directed to them, requiring them to hand it over? So if they're not parties, how does an injunction get you the relief you want? Because the court exercises in rem jurisdiction over the dog, over the property, Your Honor. Now we wanted the people, the new owners, although technically by statute they're not new owners, because it's a service dog, and a new owner can't adopt a service dog, it's a pet. But we wanted them there. We asked for them to be there. The Animal Foundation has fought every step of the way from having the individuals who own the dog even be aware that there's litigation going on. We believe they have no idea that there's a federal case, let alone an appellate case, concerning their dog. So the harm that they would suffer has been created completely by the Animal Foundation and their bad conduct. Now Your Honor, the most important documents in this case are excerpts of records 109 through 122. And on that page 122, during that month, they sent 548 dogs to foster care. But they would not send my client's dog to foster care. Knowing that he was hospitalized. And he contacted them. Document number 111 is the most important document in the case. And that shows that he was not an unclaimed dog. On May the 24th, he contacted Clark County Animal Control and they relayed to the Animal Foundation that he was in a hospital in California and wanted to make sure that his dog was secure. Thank you, counsel. I think we have your position and you're over time. Thank you, Your Honor. We'd ask you to reverse the district court. Thank you. We thank both counsel for their helpful arguments. And the case just argued is submitted. Thank you, Your Honor.
judges: Miller, Hunsaker, Rayes